IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05 C 1571 |
| | ) | |
| CITY OF CHICAGO and | ) | |
| CARLOS MOTA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence Griffin brought this action against the City of Chicago and Carlos Mota, alleging violations of his Fourth and Fourteenth Amendment rights arising from his arrest for criminal trespass to a vehicle and prosecution for possession of a controlled substance. Defendant Mota has moved for summary judgment. For the following reasons, defendant's motion is denied in part and granted in part.

## BACKGROUND

The following factual background is based on the statements submitted by the parties pursuant to Local Rule 56, and, for purposes of the summary judgment motion, we construe the facts in plaintiff's favor. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Bledsoe v. City of Chicago, 1996 WL 406647, *2 (N.D.Ill.1996) (stating that only reasonable inferences, not all conceivable inferences, will be drawn in favor of the non-moving party). At some date prior to November 5, 2001 – the date of the incident at the heart of this dispute – Dollar Rent a Car entered into a contractual lease with Kyra Hickobottom for a four-door gold Chrysler Concorde, bearing the license plate number D321239. When the car was not

returned upon the lease's expiration on October 30, 2001, Dollar Rent a Car filed a formal police report, which was then entered into a police department computer system. On November 5, 2001, as part of a special investigation of auto thefts, defendant Mota and Sergeant Grand entered an Amoco gas station to run license plate numbers, checking for stolen vehicles. During that stop Mota and Grand ran the plate of a gold Chrysler Concorde, license number D321239, in which plaintiff was a passenger. Although the car's physical appearance did not indicate that it was stolen, the police computer generated a report that the Concorde had been reported as stolen. Therefore, Mota and Grand exited their vehicle and approached the Concorde. At that time the driver, Emmett Hudson, was returning to the car, plaintiff was seated in the passenger seat and a woman, Joyce Davis, was seated in the back seat.

At this point the parties' versions of the facts differ slightly. Although we construe the facts in the light most favorable to the plaintiff, we note the differences for the sake of clarity.[1] Plaintiff contends that upon approaching the vehicle, defendant Mota ordered plaintiff out of the car. Plaintiff obeyed, exiting the vehicle with his hands out and palms open to show that he was unarmed. Mota ordered plaintiff to get on his knees, repeating the orders to Davis. Grand then had a discussion with Hudson, which resulted in Hudson also being ordered to his knees. Upon a search of Davis, a female police officer who was called in for backup found a plastic bag on her person, presumed to contain drugs. Thereafter, Davis, Hudson and plaintiff were handcuffed and transported to the police station, at which time plaintiff was informed

---

[1] Defendant Mota claims that this court should discard the disputed factual statements contained in Lawrence Griffin's affidavit because it is unsigned and unsworn. The affidavit, however, is signed, and although unsworn, contains the appropriate language as required by 28 USC § 1746. Therefore, we disregard defendant's argument.

that he was being charged with possession of a controlled substance. Plaintiff alleges that defendant Mota framed him on the drug charges, subsequently filed a false report, and testified falsely at plaintiff's criminal trial.

Mota recites a different version of the facts surrounding plaintiff's arrest. He claims that upon approaching the Concorde, Grand questioned Hudson about the ownership of the car. After giving unsatisfactory answers, Hudson was arrested for criminal trespass to a vehicle. Defendant then asked plaintiff to exit the car so that he could arrest him for criminal trespass to a vehicle. While handcuffing plaintiff, defendant noticed that plaintiff was clenching his left hand. After prying open his hand, defendant recovered a small plastic bag containing cocaine.

At this point, the parties' stories re-converge. Plaintiff was thereafter charged with possession of a controlled substance, but not charged with criminal trespass to a vehicle. On January 10, 2002, plaintiff filed a motion to quash arrest and suppress the evidence of drugs. The trial court denied that motion and a subsequent motion to reconsider. Plaintiff was found guilty of possession of a controlled substance at a jury trial on March 23, 2002. Plaintiff timely filed an appeal, arguing that the evidence at the centerpiece of his prosecution – the drugs found on him upon arrest – should have been suppressed as fruit of an illegal arrest effected without an arrest warrant or probable cause, and that he was denied a fair trial. On October 15, 2003, the Illinois Appellate Court reversed plaintiff's conviction. Thereafter, on March 17, 2005, plaintiff filed this complaint, alleging violations of his civil rights.

Defendant contends that plaintiff is judicially estopped from arguing, contrary to his appellate brief, that he was not carrying drugs allegedly recovered from him. Defendant argues that plaintiff's criminal appellate argument that the drugs were inadmissible as fruit

of an illegal search is inconsistent with his current contention that no drugs were recovered from him. Defendant raises this argument for the first time in his reply brief in support of his motion for summary judgment, and thus does not allow plaintiff an opportunity for rebuttal. It is well settled that "[r]aising an issue for the first time in reply is improper, as it deprives the opposing party of a meaningful chance to respond." Peterson v. Knight Architects, Engineers, Planners, Inc., 1999 WL 1313696, *13 (N.D.Ill.1999). See also Commonwealth Edison Co. v. U.S. Nuclear Regulatory Com'n, 830 F.2d 610, 621 n7 (7th Cir.1987). Although plaintiff's complaint alludes to his innocence from any wrongdoings, plaintiff does not explicitly argue that he had no cocaine until his response brief to defendant's motion for summary judgment. Viewed in that light, defendant is not barred from answering that contention for the first time in his reply brief. See Beck v. University of Wisconsin Bd. of Regents, 75 F.3d 1130, 1134 n* (7th Cir.1996) ("'[W]here the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers – both briefs and affidavits – may properly address those issues'").

Defendant relies on New Hampshire v. Maine, 532 U.S. 742 (2001), to support his judicial estoppel argument. In that case the Supreme Court held that New Hampshire could not claim that the Piscaraqua River boundary was fixed in one place, when New Hampshire had previously agreed that the boundary of the river should be set at a different point. The Court stated, "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" New Hampshire, 532 U.S. at 749. Thus, judicial

estoppel "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase'" *Id.* Judicial estoppel, designed to "'protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment,'" (New Hampshire, 532 U.S. at 749-50), has been held to apply to § 1983 actions. Allen v. McCurry, 449 U.S. 90 (1980).

Although the doctrine of judicial estoppel is a flexible doctrine designed to maintain the integrity of the court and judicial system (*see* Matter of Cassidy, 892 F.2d 637 (7th Cir.1990)), the Supreme Court has outlined several factors to inform the decision of whether to apply judicial estoppel. Those factors include: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) a court has accepted the party's earlier position, so that judicial acceptance of the party's later inconsistent position would "create 'the perception that either the first or the second court was misled'"; and (3) the party seeking to assert the inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped," New Hampshire, 532 U.S. at 750-51. *See also* Jarrad v. CDI Telecommunications, Inc., 408 F.3d 905 (7th Cir.2005) (also looking at whether the operative facts remain the same in both cases); Penn, LLC v. New Edge Network, Inc., 2003 WL 22765048 (N.D.Ill.2003).

In this case plaintiff is estopped from arguing that he did not have drugs in his hand upon his arrest. In his appellate brief, plaintiff explicitly and clearly stated that although he did have drugs, the evidence of the drugs must be suppressed as fruit of an illegal arrest. Specifically, plaintiff stated, "After being wrongfully arrested, Mr. Griffin was searched, at which time the police found a small amount of crack cocaine in his hand. The cocaine must

be suppressed as the fruit of an illegal arrest" (def's motion, ex C, p 8). In fact, in his criminal appellate brief, plaintiff requested *de novo* review, specifically arguing that "there is not a factual dispute in this case," *Id.* This is clearly inconsistent with plaintiff's current argument that a factual dispute exists in his § 1983 civil action, specifically that defendant did not find drugs on plaintiff during the allegedly illegal search, and that defendant falsely fabricated evidence of such drugs. The Appellate Court of Illinois relied on plaintiff's stipulation that "the item recovered from defendant [Griffin] tested positive for cocaine" (def's motion, ex H, p 6) in finding that the officers lacked probable cause to search Griffin, that evidence of the cocaine should have been suppressed as fruit of an illegal arrest, and thus, that the conviction must be reversed. Plaintiff cannot now argue that he did not have drugs on him at the time of his arrest – allowing such an argument could create judicial inconsistencies and encourage perjury. The doctrine of judicial estoppel was developed to limit such an undermining of judicial integrity. Therefore, we hold that plaintiff is estopped from asserting that he was not carrying drugs in his hand at the time of his arrest. *See* Salley v. Schmitz, 1996 WL 665673 (N.D.Ill.1996) (plaintiff was judicially estopped from arguing in his § 1983 claim that he did not shoot at officers since he had made a prior contradictory statement when pleading guilty to a criminal charge stemming from the same incident).

Although plaintiff is estopped from arguing that defendant falsely planted drugs on him or testified falsely as to evidence of drugs during his criminal trial, his § 1983 false arrest claim is not entirely foreclosed. He can maintain a limited action against defendants for any damages that flow directly from his allegedly illegal arrest in violation of his Fourth Amendment rights.

## DISCUSSION

Under FED.R.CIV.P. 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also* <u>Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis</u>, 806 F.2d 146, 149 (7th Cir.1986). The moving party has the burden to establish the lack of a genuine issue of material fact. <u>Wainwright Bank & Trust Co.</u>, 806 F.2d at 149. Upon meeting that burden, the non-moving party must set forth specific facts that demonstrate the existence of a genuine issue for trial. <u>Posey v. Skyline Corp.</u>, 702 F.2d 102, 105 (7th Cir.1983). The mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion – only a genuine dispute over a material fact will defeat summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986).

Because a finding of probable cause for arrest would be dispositive of the case, we address that issue first. We next address the issue of qualified immunity, as a finding of immunity would also serve as a bar to plaintiff's claims. Finally, we address plaintiff's due process claim, which has been uniquely treated in Seventh Circuit law.

<u>Probable Cause</u>

Defendant correctly states that the existence of probable cause is an absolute bar to a § 1983 claim for false arrest. <u>Friedman v. Village of Skokie</u>, 763 F.2d 236, 239 (7th Cir.1985); <u>Woods v. Willingham</u>, 1995 WL 225721, *4 (N.D.Ill.1995). Plaintiff does not dispute that general rule. Rather, he argues that defendant never had probable cause for plaintiff's arrest. Thus, after viewing the evidence in the light most favorable to the plaintiff, we must determine

whether the uncontested evidence of probable cause is adequate to find its existence as a matter of law.

"The police have probable cause to arrest an individual when 'the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense,'" Maxwell v. City of Indianapolis, 998 F.2d 431, 433 (7th Cir.1993). The existence of probable cause for arrest varies with the situation and is related to the "exercise of judgment, which 'turn[s] on the assessment of probabilities in particular factual contexts ....'" Id., at 434.

Defendant puts forth two arguments to support his probable cause argument. First, he asserts a totality of the circumstances argument, maintaining that defendant's experience and the circumstances surrounding the arrest, combined with the information transmitted via the police computer, gave him probable cause to arrest defendant. Second, he argues that a signed sworn complaint from Rent a Car agent Larry Edwards, against plaintiff, for criminal trespass to a vehicle, was sufficient to warrant probable cause for plaintiff's arrest.

Because it is easily disposed of, we address defendant's second argument at the outset. Defendant correctly asserts that "[t]he signed complaint of a private citizen provides probable cause for arrest" (def's mem. at 5) (citing Bledsoe v. City of Chicago, 2000 WL 22094[2], *3 (N.D.Ill.); Spiegel v. Cortese, 196 F.3d 717 (7th Cir.1999)). Such rule, however, applies only if the complaint was signed prior to the plaintiff's arrest. See Spiegel, 196 F.3d at 723 ("The existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information"). In this case it appears that the

---

[2]The correct citation is 2000 WL 220494.

Edwards' complaint was signed after plaintiff's arrest, when Rent a Car was notified of the Concorde's recovery (def's mem. at 5). Thus, the complaint could not provide probable cause for plaintiff's arrest. *See* <u>Woods</u>, 2000 WL 225721 at *5.

Just because defendant cannot rely on Edwards' complaint for probable cause does not necessarily mean that probable cause did not exist. In order to address defendant's second argument, we analyze whether "if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." <u>Janowitz v. City of Chicago</u>, 1999 WL 731691, *4 (N.D.Ill.1999). In evaluating whether it was reasonable to believe a crime was being or had been committed, we consider the situation as it would have appeared to the officer at the time of the arrest. *See* <u>Anderer v. Jones</u>, 385 F.3d 1043, 1049 (7th Cir.2004).

Defendant relies almost exclusively on the computer-generated record showing that the Concorde had been reported stolen to prove his totality-of-the-circumstances argument. Defendant argues that he appropriately relied on the information transmitted via his police computer, that such reliance supported a reasonable suspicion that anyone found in the car was committing an offense, and he therefore had probable cause to arrest plaintiff. It is true that police can make an arrest in reliance on a police bulletin that was posted with probable cause, even if the arresting officer does not know the specific facts establishing probable cause. <u>United States v. Hensley</u>, 469 U.S. 221, 232 (1985) ("We conclude that, if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, to pose questions to the person, or to detain the person briefly while attempting

to obtain further information"). *See also* <u>Tangwall v. Stuckey</u>, 135 F.3d 510, 517 (7th Cir.1998); <u>U.S. v. Valencia</u>, 913 F.2d 378, 383 (7th Cir.1990); <u>Dykhouse v. Mugge</u>, 735 F.Supp. 1377, 1381 (C.D.Ill.1990).

Although a police bulletin can give an officer probable cause for arrest, it does not give him *carte blanche* to arrest a passenger of a stolen vehicle if the officer has no reason to suspect that the passenger knows that he lacks permission to be in the vehicle. Illinois courts have found that a "person's mere proximity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search or seize that person." <u>People v. Drake</u>, 683 N.E.2d 1215, 1219 (Ill.App.Ct.1997). Citing <u>Ybarra v. Illinois</u>, 444 U.S. 85, 91 (1979), the <u>Drake</u> court noted, "[w]here the standard is probable cause, a search or seizure of the person must be supported by probable cause particularized with respect to that person, and this requirement cannot be undercut or avoided simply by showing that there exists probable cause to search or seize another person who is nearby." *Id. See also* <u>People v. Creach</u>, 402 N.E.2d 228, 231 (Ill.1980); <u>People v. Garvin</u>, 812 N.E.2d 773, 779 (Ill.App.Ct.2004) The undisputed facts reveal that plaintiff was a passenger in the car, there was no obvious or physical markings on the car to indicate that it had been stolen, and plaintiff was not doing anything illegal at the time defendant approached the Concorde. *Cf.* <u>People v. Cook</u>, 665 N.E.2d 299 (Ill.App.Ct.1995) (finding probable cause for arrest of passenger where there was no key in the ignition, the steering column was peeled, the driver's side window was shattered, and a screwdriver, rubber mallet and pieces of the steering column were on the floor of the car). Therefore, plaintiff's presence in the suspected car was, by itself, insufficient as probable cause for arrest. *Cf.* <u>Maryland v. Pringle</u>, 540 U.S. 366 (2003) (police had probable cause to believe car passenger was committing a crime where the car was pulled over in the middle of

the night, bags of cocaine were accessible to all three car passengers, and none of the car's occupants could explain the drugs or money found in the car); U.S. v. Montgomery, 377 F.3d 582 (6th Cir.2004) (affirming legality of search of car passenger where occupants of the car were nervous, a marijuana stem was in plain view, and occupants were attempting to conceal an unknown object).

Because probable cause is generally a question for the jury (see Maxwell, 998 F.2d at 434; Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1347 (7th Cir.1985); Woods, 1995 WL 225721 at *6 (noting a "strong policy in this circuit toward allowing the question of probable cause to reach the jury")), we conclude that the question of probable cause cannot be determined on this motion for summary judgment. See Caruthers v. Matos, 1997 WL 208445, *5 (N.D.Ill.1997) (stating that "[p]robable cause can be found as a matter of law ... only when the facts permit but one conclusion – that is, 'only when no reasonable jury could find that the officer[ ] did not have probable cause' to make an arrest").

Qualified Immunity

If probable cause to arrest existed, then defendant cannot be held liable under § 1983. If probable cause to arrest did not exist, however, defendant may still be shielded from liability under the doctrine of qualified immunity. Under qualified immunity, "'public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known'" Maxwell, 998 F.2d at 435.

Because qualified immunity is both an immunity from suit and a defense to liability, we should resolve the issue of qualified immunity "at the earliest possible stage in litigation." Saucier v. Katz, 533 U.S. 194, 201 (2001). Qualified immunity is analyzed in a two-step

process. We first ask, "do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* If we answer that question in the affirmative, we next ask, in light of the specific context of the case, was the right clearly established? *Id.* To do that, we analyze whether the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*, at 202. *See also* Jones v. Wilhelm, 425 F.3d 455, 460-461 (7th Cir.2005) (declining to read a reasonableness requirement into the Saucier test).

We answer Saucier's first question in the affirmative. Viewing the facts in the light most favorable to the plaintiff, defendant lacked probable cause to arrest plaintiff, violating plaintiff's constitutional right to be free of illegal search or seizure. Next, we find a clearly established right to be free from arrest without probable cause. *See* Marshall ex rel. Gossens v. Teske, 284 F.3d 765, 772 (7th Cir.2002). Here we again view the facts in the light most favorable to the plaintiff. Due to the fact that plaintiff did not appear to be doing anything illegal prior to defendant's approach, there were no physical signs that the car was stolen and plaintiff was a mere passenger in the car, a reasonable jury could find that no prudent officer would have believed that plaintiff had committed or was committing a crime. Therefore, we cannot grant defendant qualified immunity at this time.

## Due Process Claim

Defendant argues that "[p]laintiff's denial of a fair trial claim should not survive this motion for summary judgment" because he cannot prove a Brady violation, as required under Newsome v. McCabe, 256 F.3d 747 (7th Cir.2001), and under Gauger v. Hendle, 349 F.3d 354 (7th Cir.2003). A due process claim cannot extend to situations where the plaintiff was aware of the misconduct at the time of trial. Plaintiff contends that § 1983 provides a remedy when a police officer frames an arrestee, arguing that his case fits squarely within the Newsome

paradigm. We agree with defendant.

In <u>Newsome</u>, the Seventh Circuit held that where state courts will entertain malicious prosecution tort suits, as is true in Illinois, federal courts should not recognize a malicious prosecution constitutional tort under § 1983. The court held that such a claim should be analyzed as a "due process claim in the original sense of that phrase," focusing on whether plaintiff "did not receive a fair trial if the prosecutors withheld material exculpatory details." <u>Newsome</u>, 256 F.3d at 752 (preferring a fair trial, rather than formerly-used substantive due process analysis).[3] Defendant argues that <u>Newsome</u> should be read to limit due process relief to cases where the facts show that the prosecution failed to disclose exculpatory evidence to the defendant in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). We agree (*see* <u>Sellers v. Bragg</u>, 2005 WL 1667406 (N.D.Ill.2005), <u>Ienco v. Angarone</u>, ("Ienco II"), 291 F.Supp.2d 755 (N.D.Ill.2003)), especially in light of <u>Gauger</u>. In <u>Gauger</u>, the Seventh Circuit declined to find a <u>Brady</u> violation where defendants allegedly falsified testimony regarding plaintiff's interrogation, stating that "the duty to disclose falls out, because Gauger knew what he had said at the interrogation," 349 F.3d at 360. The court in <u>Holden v. Baldwin</u>, 2005 WL 1667781, *2 (N.D.Ill.2005), explained the rationale:

> Holden's ability to persuade a jury to accept his version of events probably would be enhanced or even ensured if the officers admitted to the actions he alleges they took. However, it is the duty of the effective cross-examiner to bring this to light, not the investigating officer. By virtue of his presence at the events in question, Holden has all of the information he needed to challenge the officers' testimony; what he wishes is information that would allow him to undoubtedly convince. <u>Brady</u> requires the former, but not the latter.

---

[3]We understand the Seventh Circuit's reasoning in <u>Newsome</u> to stem from its desire to preserve absolute immunity for testimony in a criminal prosecution. Without such limitation of § 1983 due process claims, virtually every criminal case where there was a reversal could be relitigated as a § 1983 due process action.

Similarly, plaintiff was at the scene of his arrest and could testify to the fact that he did not have drugs on him. It was up to plaintiff's counsel to impeach defendant's credibility if defendant was falsifying testimony on the stand.

Plaintiff argues that the facts of his case fit squarely into the <u>Newsome</u> paradigm,[4] pointing to <u>Ienco v. City of Chicago</u> ("<u>Ienco I</u>"), 286 F.3d 994 (7th Cir.2002), and <u>Bontowski v. Smith</u>, 305 F.3d 757 (7th Cir.2002), to support his theory. Plaintiff correctly quotes <u>Ienco I</u>: "<u>Newsome</u> teaches that ... the plaintiff must allege that the officers withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." <u>Ienco I</u>, 286 F.3d at 998-99. In <u>Ienco I</u>, however, the Seventh Circuit remanded plaintiff's case, instructing the district court to allow plaintiff to amend his complaint to include allegations relevant to a viable due process claim under Newsome – the court did not hold that plaintiff had already made out such a viable claim. On remand, the district court explained that "inherent in a successful § 1983 due process claim under <u>Newsome</u> is proof that the officers (and thus, derivatively, the prosecutors) violated the rule set forth in <u>Brady v. Maryland</u>." <u>Ienco II</u>, 291 F.Supp. 2d at 759. Citing <u>Gauger</u>, the <u>Ienco II</u> court went on to state that "the Seventh Circuit recently clarified that the <u>Newsome</u> rule links an officer's failure to disclose exclupatory evidence with the prosecutor's <u>Brady</u> obligations." *Id.* Ienco argued that defendant police officers violated his due process rights by lying to prosecutors and giving false testimony, which led to further investigation and prosecution. The <u>Ienco II</u> court found no <u>Brady</u> violation and thus no <u>Newsome</u> due process § 1983 claim. The court agreed with defendants that "if the allegedly withheld evidence is the fact that Ienco provided identification upon the officers'

---

[4] Plaintiff also claims that defendant's absolute immunity for giving false testimony is shattered under the "complaining witness exception" to witness immunity. Because plaintiff does not actually make an argument that this case fits into the complaining witness exception, we will not address its merit.

request, Ienco already possessed this piece of information – he was present at the scene when the defendants asked for his identification." Ienco II, 291 F.Supp.2d at 761. It seems clear that Ienco is no help to plaintiff's argument; neither is Bontowski. We find that plaintiff cannot maintain a § 1983 due process claim according to the facts of this case. Therefore, we grant defendant's summary judgment motion as it pertains to the due process claim.

## CONCLUSION

For the reasons set forth above, we deny defendant's motion for summary judgment as to the Fourth Amendment claim and grant defendant's motion for summary judgment as to the due process claim.

James B. Moran

**JAMES B. MORAN**
Senior Judge, U. S. District Court

Dec. 13 , 2005.